**21-1346**

# United States Court of Appeals

### *for the*

# Fourth Circuit

---

JANE ROE,

*Plaintiff-Appellant,*

– v. –

UNITED STATES, *et al.*,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT ASHEVILLE

## BRIEF OF *AMICI CURIAE* AZIZ HUQ AND
## ERWIN CHEMERINSKY IN SUPPORT OF APPELLANT

ILANN M. MAAZEL
SAMUEL SHAPIRO
EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
imaazel@ecbawm.com
sshapiro@ecbawm.com

*Counsel for Amici Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __21-1346__         Caption: __Jane Roe v. United States, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Aziz Huq__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                            ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Ilann M. Maazel                    Date: _____8/25/2021_____

Counsel for: Aziz Huq

# CERTIFICATE OF SERVICE
**************************
I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __21-1346__      Caption: __Jane Roe v. United States, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Erwin Chemerinsky__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                          ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                             ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Ilann M. Maazel         Date:   8/25/2021

Counsel for: Erwin Chemerinsky

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____             _____
        (signature)                                    (date)

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ...................................................................ii-iii

IDENTITY AND INTEREST OF AMICI .........................................1

PARTIES CONSENT TO THIS BRIEF AND NO PARTY FUNDED ITS PREPARATION .........................................................................1

SUMMARY OF ARGUMENT ..........................................................2

ARGUMENT .......................................................................................3

I.    FEDERAL COURT JURISDICTION OVER THE UNITED STATES AND ITS OFFICIALS DEPENDS ON THE NATURE OF THE RELIEF SOUGHT AND THE IDENTITY OF THE DEFENDANT ........................................................................3

II.    SOVEREIGN IMMUNITY DOES NOT BAR ROE'S NONSTATUTORY REVIEW CLAIMS..............................................4

    A.    Since the Early Days of the Republic, Federal Courts Have Exercised Jurisdiction Over Suits Seeking Prospective Relief against Federal Officials in their Official Capacities ................5

    B.    The *Larson-Dugan* Line of Decisions Permit Jurisdiction Over Nonstatutory Review Claims for Statutory or Constitutional Claims Alone....................................................7

    C.    Roe's Nonstatutory Review Claims Are the Kinds of Claims Over Which Federal Courts Have Long Exercised Jurisdiction ...............................................................11

III.    BIVENS DOES NOT SUPPORT THE DISTRICT COURT'S DISMISSAL OF ROE'S NONSTATUTORY REVIEW CLAIMS ON SOVEREIGN IMMUNITY GRUONDS ....................................12

CONCLUSION ...................................................................................14

i

<u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

**Cases**

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971)..................................................................... 2, 12

*Boumediene v. Bush*,
   553 U.S. 723 (2008)......................................................................10

*Dugan v. Rank*,
   372 U.S. 609 (1963)........................................................................9

*Ex Parte Young*,
   209 U.S. 123 (1908)........................................................................4

*Kendall v. U.S. ex rel. Stokes*,
   37 U.S. 524 (1838)..........................................................................6

*Kentucky v. Graham*,
   473 U.S. 159 (1985)........................................................................5

*Larson v. Domestic & Foreign Commerce Corporation*,
   337 U.S. 682 (1949)............................................................. 7, 8, 10

*Malone v. Bowdoin*,
   369 U.S. 643 (1962)........................................................................9

*Marbury v. Madison*,
   5 U.S. 137 (1803)............................................................................5

*Meigs v. McClung's Lessee*,
   13 U.S. 11 (1815)............................................................................6

*Munaf v. Geren*,
   553 U.S. 674 (2008)......................................................................10

*Pollack v. Hogan*,
   703 F.3d 117 (D.C. Cir. 2012)........................................................9

*Rasul v. Bush*,
   542 U.S. 466 (2004)......................................................................10

*Roberts v. U.S. ex rel. Valentine*,
    176 U.S. 221 (1900)............................................................................6

*Shields v. Utah Idaho Cent. R.R. Co.*,
    305 U.S. 177 (1938)........................................................................6, 7

*Simmat v. U.S. Bureau of Prisons*,
    413 F.3d 1225 (10th Cir. 2005) ......................................................9

*Switzerland Co. v. Udall*,
    337 F.2d 56 (4th Cir. 1964) ...........................................................10

*United States v. Lee*,
    106 U.S. 196 (1882)..........................................................................6

*United States v. Yakima Tribal Ct.*,
    806 F.2d 853 (9th Cir. 1986) .........................................................10

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959)........................................................................8, 9

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)........................................................................6, 7

## Other Authorities

Clark Byse & Joseph V. Fiocca,
    *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory"*
    *Judicial Review of Federal Administrative Action*, 81 Harv. L. Rev. 308
    (1967)................................................................................................4

Jonathan R. Siegel,
    *Suing the President: Nonstatutory Review Revisited,* 97 Colum. L. Rev.
    1612 (1997)......................................................................................5

Kenneth Culp Davis,
    *Suing the Government by Falsely Pretending to Sue an Officer*, 29 U.
    Chi. L. Rev. 435 (1962) .................................................................9

## IDENTITY AND INTEREST OF AMICI

Amici Aziz Huq and Erwin Chemerinsky (collectively, "Amici") are attorneys and law professors who teach and write on federal courts, and who are concerned with the proper understanding and application of core doctrines regulating access to the federal courts, including the doctrine of sovereign immunity.

Aziz Huq is the Frank and Bernice J. Greenberg Professor of Law at the University of Chicago Law School. He teaches Federal Courts, amongst other classes, and he is a scholar of United States and comparative constitutional law. He has written extensively on a range of topics, including access to federal courts.

Erwin Chemerinsky is the Dean and Jesse H. Chopper Distinguished Professor of Law at Berkeley Law. He is one of the country's preeminent constitutional law scholars and the author of leading casebooks and treatises on constitutional law and federal jurisdiction.

## PARTIES CONSENT TO THIS BRIEF AND NO PARTY FUNDED ITS PREPARATION

The parties have consented to the filing of this brief.

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no person—other than Amici and their undersigned counsel— contributed money to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The District Court erred by holding that the doctrine of sovereign immunity bars Jane Roe's prospective injunctive and declaratory relief claims against federal officials in their official capacities. *See* JA 101; JA 1511.[1]

The sovereign immunity analysis differs depending on the identity of the defendant and the nature of the relief sought. The District Court failed to specifically analyze whether sovereign immunity bars Roe's equitable claims against federal officials in their official capacities. Sovereign immunity is no bar to such claims. To the contrary, since the early days of the Republic, federal courts have exercised jurisdiction over actions, like Roe's, that seek to enjoin federal officials in their official capacities from exceeding the scope of their authority or acting unconstitutionally.

In dismissing Roe's equitable claims against federal officials in their official capacities, the District Court mistakenly overlooked this long-established line of precedent. Instead, it relied on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), a doctrine that concerns solely actions for money damages actions. *Bivens* and its progeny offer no support for dismissal of Roe's equitable claims for prospective relief on sovereign immunity grounds.

---

[1]      Citations to "JA" refer to the Joint Appendix, filed on August 20, 2021.

2

This Court should correct the District Court's error, apply the well-settled rule that sovereign immunity does not bar forward-looking equitable claims against federal officials in their official capacities when the officials are alleged to have acted beyond the scope of their authority or unconstitutionally, and remand for appropriate further proceedings.

## ARGUMENT

**I. FEDERAL COURT JURISDICTION OVER THE UNITED STATES AND ITS OFFICIALS DEPENDS ON THE NATURE OF THE RELIEF SOUGHT AND THE IDENTITY OF THE DEFENDANT**

Sovereign immunity for state and federal officials alike turns on the identity of the defendant and the character of the relief sought. Suits touching on the United States or its officials can name the following categories of defendants: (1) the United States; (2) an agency, arm, or entity that is part of the United States; (3) federal officers in their personal capacities; and (4) federal officers in their official capacities. The relief sought in such suits can be: (a) retrospective (*i.e.*, damages), or (b) prospective (*i.e.*, injunctions and, where permitted, declarations). Each combination of defendant and relief presents a distinct jurisdictional question. Roe asserts claims against all of these categories of federal defendants, and she seeks both retrospective and prospective relief.

3

This brief focuses solely on Roe's claims against federal officials named in their official capacities[2] seeking prospective (injunctive and declaratory) relief.[3]  Under longstanding and well established Supreme Court precedent, sovereign immunity is no bar to such claims.

## II.     SOVEREIGN IMMUNITY DOES NOT BAR ROE'S NONSTATUTORY REVIEW CLAIMS

United States courts have an established history of exercising jurisdiction over claims for prospective relief against federal officials in their official capacities.  Such claims are often referred to as "nonstatutory review" claims, *see* Clark Byse & Joseph V. Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 Harv. L. Rev. 308, 322 (1967), a phrase this brief employs throughout. These are analogous to claims pursuant to *Ex Parte Young*, 209 U.S. 123 (1908): They are "official-capacity actions for prospective relief [that] are not treated as

---

[2]     Roe has sued the following federal officials in their official capacities: the Chair of the Judicial Conference Committee on Judicial Resources, the Director of the Administrative Office of the United States Courts, the Chief Judge of the Fourth Circuit, the Chair of the Judicial Council of the Fourth Circuit, the Circuit Executive of the Fourth Circuit, the Secretary of the Judicial Council of the Fourth Circuit, and the Federal Public Defender for the Western District of North Carolina (collectively, the "Official Capacity Defendants").

[3]     This brief does not address Roe's claims against other defendants or her claims for damages. Nor does it take any position on the merits of Roe's constitutional claims.

actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

History and precedent compels the conclusion that Roe's nonstatutory review

claims are not barred by sovereign immunity.

### A. Since the Early Days of the Republic, Federal Courts Have Exercised Jurisdiction Over Suits Seeking Prospective Relief against Federal Officials in their Official Capacities

The seminal decision of *Marbury v. Madison* illustrates nonstatutory

review. William Marbury and others sought a writ of mandamus against the

Secretary of State, James Madison, in his official capacity, compelling him to

deliver a copy of the commissions appointing them as Justices of the Peace. 5 U.S.

137, 173 (1803); Jonathan R. Siegel, *Suing the President: Nonstatutory Review*

*Revisited,* 97 Colum. L. Rev. 1612, 1625 (1997) ("[T]he most famous case of all,

*Marbury v. Madison*, was a nonstatutory review case." (citation omitted)). Before

finding the provision of the 1789 Judiciary Act permitting original-jurisdiction

suits invalid, Chief Justice Marshall affirmed that "where a specific duty is

assigned by law, and individual rights depend upon the performance of that duty, .

. . the individual who considers himself injured, has a right to resort to the laws of

his country for a remedy." *Marbury*, 5 U.S. at 166; *id.* (affirming that Madison was

"the officer of the law" and so "amenable to the laws for his conduct").

Over the next century and a half, the Supreme Court adhered to

Justice Marshall's instruction in *Marbury* that the federal courts have jurisdiction

to protect an individual's rights by ordering a federal official to act (or refrain from acting) in his or her official capacity. *See*, *e.g.*, *Meigs v. McClung's Lessee*, 13 U.S. 11, 18 (1815) (federal courts have jurisdiction to order federal officials to return land that had been unlawfully occupied by the United States); *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 613-14 (1838) (upholding grant of mandamus compelling the Postmaster General in his official capacity to fulfill the Treasury's settlement of the plaintiff mail carriers' contract claims); *United States v. Lee*, 106 U.S. 196, 215-16 (1882) (compelling federal officials to return land that had been unlawfully seized); *Roberts v. U.S. ex rel. Valentine*, 176 U.S. 221, 225-26 (1900) (compelling the U.S. Treasurer to pay interest on a private citizen's board of audit certificates); *Shields v. Utah Idaho Cent. R.R. Co.*, 305 U.S. 177, 183-85 (1938) (courts had "equity jurisdiction" to review and, if necessary, reverse determination of federal agency); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 584 (1952) (enjoining the enforcement of seizure orders issued by the Secretary of Commerce and the President).

In all these cases, federal courts exercised jurisdiction to enjoin federal officials from purporting to exercise powers they do not in fact possess. *Marbury* and other mandamus cases, for example, typically arose from federal officials refusing to perform statutory duties or invoking statutory authority that they lacked. Other nonstatutory review cases concerned official acts at odds with

6

the Constitution. In *Youngstown Sheet & Tube*, for example, the Court exercised

jurisdiction to enjoin the enforcement of seizure orders issued pursuant to

purported powers the Constitution withheld from the president and his cabinet

officials alike. 343 U.S. at 584-89.

      The threshold question in nonstatutory review cases is whether federal

officials were alleged to act beyond the bounds of their legal powers. In *Shields v.*

*Utah Idaho Central Railroad*, for example, the Court was called upon to review an

agency determination that was made pursuant to "validly conferred" authority and

the Court limited its review to "simply whether the [agency] had acted within its

authority." 305 U.S. at 185. Because the agency in fact possessed the power to act,

the Court's sole role was to confirm that the agency had acted within the scope of

its legitimate power.

    **B.**    **The *Larson-Dugan* Line of Decisions Permit Jurisdiction Over Nonstatutory Review Claims for Statutory or Constitutional Claims Alone**

      In the mid-twentieth century, the Supreme Court clarified and limited

nonstatutory review. First, *Larson v. Domestic & Foreign Commerce Corporation*

acknowledged the well-settled practice of granting equitable relief in nonstatutory

review cases in two categories of cases: those (1) alleging that a federal official's

powers "are limited by statute" and that the official's actions went "beyond those

limitations," and (2) alleging that "the statute or order conferring power upon the

officer to take action" is unconstitutional. 337 U.S. 682, 689-90 (1949). But *Larson*

distinguished these two cases from a third category of cases alleging violations of

"general law, if they would be regarded as the actions of a private principal under

the normal rules of agency." *Id.* at 695. In such cases, the official's act—whether

correct or incorrect—is "inescapably the action of the United States and the effort

to enjoin it must fail as an effort to enjoin the United States." *Id.* at 703.

As the *Larson* Court summarized, "the action of an officer of the

sovereign . . . can be regarded as so 'illegal' as to permit a suit for a specific relief

against the officer as an individual only if it is not within the officer's statutory

powers or, if within those powers, only if the powers, or their exercise in the

particular case, are constitutionally void." *Id.* at 701-02; *see also* Richard H.

Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System*

893-94 (7th ed. 2015) ("Officer suits seeking to compel official action should be

treated as *not* barred by sovereign immunity, the Chief Justice said, only when they

are ultra vires . . . [and then] [d]eeming action in violation of the Constitution to be

necessarily ultra vires . . . .").

A decade later, the Court applied these principles in a suit by a former

federal employee against the Secretary of Interior in his official capacity seeking

"reinstatement" following an illegal termination. *See Vitarelli v. Seaton*, 359 U.S.

535, 546 (1959). The *Vitarelli* Court granted that prospective relief against the

official. *Id.*; Kenneth Culp Davis, *Suing the Government by Falsely Pretending to Sue an Officer*, 29 U. Chi. L. Rev. 435, 435-46 (1962) (discussing *Vitarelli*). The facts of *Vitarelli* closely parallel the facts presented by this case and demonstrate crisply the absence of any sovereign-immunity impediment to prospective relief.

The Court reaffirmed these principles four years later in *Dugan v. Rank*, 372 U.S. 609 (1963). There, the Court stated that injunctive relief is available against federal officials when (1) their actions are "beyond their statutory powers," and (2) "even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." *Id.* at 621-22; *see also Malone v. Bowdoin*, 369 U.S. 643, 647 (1962) (affirming that prospective relief can be sought if an action is "'not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void'" (citation omitted)).

*Larson* and its progeny hence affirm federal-court jurisdiction over suits against officials in their official capacity alleging that a federal official acted unconstitutionally. *See, e.g.*, *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (nonstatutory review claim that "the named officers acted unconstitutionally" "falls within the *Larson– Dugan* exception"); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1232-33 (10th Cir. 2005) (sovereign immunity did not bar nonstatutory review claim seeking injunctive relief against federal prison officials who allegedly

9

violated plaintiff's Eighth Amendment rights); *United States v. Yakima Tribal Ct.*, 806 F.2d 853, 859 (9th Cir. 1986) ("[I]f a federal official, acting pursuant to a constitutional statute, commits an unconstitutional act, he cannot be acting on behalf of the government because his actions go beyond the scope of his authority and are *ultra vires.* Any claim making such constitutional allegations is not barred by sovereign immunity and will be within the jurisdiction of the federal court." (cleaned up)); *cf. Switzerland Co. v. Udall*, 337 F.2d 56, 61 (4th Cir. 1964) (finding sovereign immunity because there was "no suggestion of constitutional invalidity").

Federal habeas petitions seeking equitable relief against federal officials who act unconstitutionally also reflect the *Larson-Dugan* exception, and are specifically mentioned as such in *Larson*, 337 U.S. at 690. Hence, in the first decade of the 21st century, the Supreme Court resolved several cases brought by detainees against officials in their official capacity alleging constitutional violations. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 771 (2008); *Munaf v. Geren*, 553 U.S. 674, 680 (2008); *Rasul v. Bush*, 542 U.S. 466, 473-74 (2004). None of these cases contains even a hint that sovereign immunity barred equitable remedies against unconstitutional detention. To the contrary, all assume— consistent with longstanding precedent—that detainees who were entitled to seek

10

habeas relief in the federal courts can seek prospective relief against unconstitutional conduct.

### C.    Roe's Nonstatutory Review Claims Are the Kinds of Claims Over Which Federal Courts Have Long Exercised Jurisdiction

Roe's equitable claims against the Official Capacity Defendants are squarely in the heartland of nonstatutory review over which federal courts have long exercised jurisdiction. Roe alleges that the process the Official Capacity Defendants adopted and applied to hear, adjudicate, and decide her claims of workplace harassment and discrimination violated her Due Process and Equal Protection rights under the Fifth Amendment. *See* JA 82-83 ¶¶ 494-99. The prospective relief she seeks is a declaration that her "constitutional rights were violated"; a declaration that the "laws, regulations, and rules that operated to deprive Plaintiff of her rights unconstitutional as applied to Plaintiff"; and an injunction against "any further violation of Plaintiff's rights." JA 101.

Sovereign immunity does not protect the Official Capacity Defendants from Roe's nonstatutory review claims. Assuming Roe's allegations to be true, the Official Capacity Defendants' conduct was beyond the scope of their powers and constitutionally impermissible—in a phrase, *ultra vires*—and as such amenable to the jurisdiction of the federal courts. The District Court therefore erred in dismissing Roe's equitable claims for prospective relief against the Official Capacity Defendants on sovereign immunity grounds.

11

III.    **BIVENS DOES NOT SUPPORT THE DISTRICT COURT'S
        DISMISSAL OF ROE'S NONSTATUTORY REVIEW CLAIMS ON
        SOVEREIGN IMMUNITY GRUONDS**

The District Court erroneously relied on *Bivens*, a case that provides

no support for dismissing Roe's nonstatutory review claims on sovereign immunity

grounds. *See* JA 1511.

In *Bivens*, the Supreme Court recognized a cause of action *for

damages* against federal officials in their *individual capacities* alleged to have

violated the Fourth Amendment. *Bivens*, 403 U.S. at 397. *Bivens* did not involve a

nonstatutory review claim. Indeed, as Justice Harlen noted in his concurrence, no

one—not the Court, nor the dissenters, nor even the Government—disputed the

"presumed availability of federal equitable relief, if a proper showing can be made

in terms of the ordinary principles governing equitable remedies." *Id.* at 400

(Harlan, J. concurring). *Bivens* does not even touch on sovereign immunity, since

the claims at issue were brought against federal officials in their individual

capacities.

The District Court erroneously used its finding that Roe "fail[ed] to

allege a cognizable claim" under *Bivens* against the Official Capacity Defendants,

JA 1511, as the basis for its conclusion that sovereign immunity bars Roe's claims

for prospective equitable relief against the Official Capacity Defendants. But

different rules govern the availability of nonstatutory actions for prospective relief

12

and *Bivens* actions for retrospective relief. A federal court's jurisdiction over a nonstatutory review claim does not turn on whether such a claim is cognizable under *Bivens*. The Supreme Court has never suggested that the constraints on *Bivens*' reach apply to a federal court's jurisdiction over nonstatutory review claims. Indeed, to do so would be to overrule *Marbury*, *Larson*, *Dugan*, and their progeny.

*Bivens* is hence irrelevant to Roe's ability to pursue her prospective claims. It cannot sustain the District Court's conclusion that "sovereign immunity shields [the Official Capacity Defendants] from suit," JA 1492, with respect to Roe's nonstatutory review claims.

13

## CONCLUSION

Federal courts have long exercised the power to stop federal officials from acting unconstitutionally. Roe's nonstatutory review claims ask the federal courts to exercise that power here. If she can prove her claim that the Official Capacity Defendants acted beyond the scope of their powers or wielded their powers to deprive her of her constitutional rights, it is surely within the power of the courts to declare their conduct unconstitutional and to enjoin it.

Dated: August 26, 2021
          New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP


*/s/ Ilann M. Maazel*
Ilann M. Maazel
Samuel Shapiro

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Amici Curiae Aziz Huq*
*& Erwin Chemerinsky*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No.  21-1346          **Caption:**  Jane Roe v. United States of America, et al.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.     Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑  this brief or other document contains _____2,794_____ [*state number of*] words

☐  this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑  this brief or other document has been prepared in a proportionally spaced typeface using
MS Word_____ [*identify word processing program*] in
Times New Roman, 14 point_____ [*identify font size and type style*]; or

☐  this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s)  Ilann M. Maazel_____

Party Name  Asiz Huq and Erwin Chemerinsky____

Dated: 8/26/2021_____

11/14/2016  SCC